STATE OF NORTH CAROLINA v. BOBBY E. BOWDEN

No. 6

(Filed 5 October 1976)

1. **Jury § 7— juror already accepted by State — equivocation on death penalty — subsequent challenge by State permissible**

    The trial court did not err in allowing the district attorney to challenge a juror peremptorily after he had passed her as a juror, since the juror, subsequent to her examination and tender by the district attorney, expressed doubts about her ability to follow the trial court's instructions if they conflicted with her personal beliefs on capital punishment.

2. **Jury § 7— juror already accepted by State — subsequent challenge by State permissible**

    Nothing in G.S. 9-21(b) limits the trial court's discretion to allow the State, before the jury is impaneled, to challenge either pe-

State v. Bowden

remptorily or for cause a prospective juror previously accepted by the State and tendered to the defendant.

**3. Criminal Law § 80— documents concerning reward — motion for production properly denied**

The trial court in a first degree murder case did not err in refusing to grant defendant's motion for the production of documents relating to the offer of a reward for information leading to the arrest and conviction of any individual involved in the murder and robbery in question, since defendant made no attempt to get the documents until after the jury selection process had commenced; if defense counsel wished to know whether any of the State's witnesses had been promised or received a reward, he could have elicited this information on cross-examinaiton; and the jury was in fact apprised of the existence of the reward offer.

**4. Criminal Law § 66— codefendant having separate trial — in-court identification proper**

In a first degree murder prosecution where the trial court at a prior term separated the cases of defendant and his codefendant, the trial court did not err in allowing the codefendant to appear in person in the courtroom during defendant's trial and be identified by two State's witnesses who saw him at the scene of the crime.

**5. Homicide § 16— dying declarations — requirements for admissibility**

Under G.S. 8-51.1 a dying declaration, to be admissible as an exception under the hearsay rule, must have been voluntary and made when the declarant was conscious of approaching death and without hope for recovery. It is not necessary for the declarant to state that he perceives he is going to die; rather if all the circumstances, including the nature of the wound, indicate that the declarant realized death was near, this requirement of the law is satisfied.

**6. Homicide § 16— dying declarations — admissibility**

The trial court in a first degree murder prosecution did not err in allowing a State's witness to testify as to a dying declaration made by a victim concerning his murderers, since there was evidence that the victim was in great pain, was bleeding from his head and stomach, was having difficulty breathing, and was aware of his substantial injury; moreover, the victim's statement to the State's witness implicating two "black dudes" was admissible as a spontaneous utterance, since only seconds elapsed between the time the killers left the victim and the State's witness discovered him.

**7. Criminal Law § 66— in-court identification of defendant — admissibility**

The trial court did not err in allowing a State's witness who observed defendant at the crime scene to make an in-court identification of defendant, since there was no illegal pretrial identification procedure which tainted the in-court identification; the witness's inability to select the defendant at a pretrial lineup did not render the lineup impermissibly suggestive and thus illegal, but instead went to the credibility of the witness.

State v. Bowden

**8. Criminal Law § 48— silence of defendant — admissibility as implied admission**

In a prosecution for two murders committed during the robbery of a Seven-Eleven store the trial court did not err in allowing into evidence testimony concerning statements made by a codefendant in defendant's presence which implicated defendant in the crimes charged, since there was evidence that defendant was in a position to hear and understand the statements, the statements were of such a nature as would require the defendant to deny them if they were false, and defendant made no such denial.

**9. Homicide § 21— felony-murder — store employee and customer — sufficiency of evidence**

Evidence was sufficient for the jury in a first degree murder prosecution where it tended to show that two people were found fatally injured in the storeroom of a Seven-Eleven store; money had been taken from the store's floor safe; defendant was seen leaving the store just prior to the discovery of the injured people; one of the victims told two witnesses that two "black dudes" were responsible; defendant had been seen often in the past in the company of a person who owned a yellow Maverick automobile; two witnesses observed a yellow Maverick at the Seven-Eleven store at the time of the crime; defendant and his codefendant had possession of a gun during the time of the crime which later proved to be the murder weapon; the codefendant stated in defendant's presence that they were responsible for the robbery and killings, and defendant did not deny it; and defendant told his girl friend that he was responsible for the crime.

**10. Constitutional Law § 36; Homicide § 31— first degree murder — life imprisonment substituted for death penalty**

A sentence of life imprisonment is substituted for the death penalty which was imposed by the trial court in this first degree murder case.

**11. Homicide § 31— felony-murder — armed robbery charge merged into homicide charges**

The trial court properly did not enter judgment as to the charge of armed robbery against defendant, since the armed robbery charge was proved as an essential element in the capital offenses of murder in the first degree and therefore was merged into the murder charges.

DEFENDANT appeals pursuant to G.S. 7A-27 (a) from judgment of *McKinnon, J.,* entered at the 15 December 1975 Criminal Session, CUMBERLAND County Superior Court.

On indictments, proper in form, defendant was charged and found guilty of two counts of first degree murder and one of armed robbery and the death sentence was imposed. No judgment was entered for the armed robbery conviction.

State v. Bowden

The evidence for the State tended to show the following:

Deceased Larry Lovett left for work around 6:00 a.m. on 7 August 1975. He was employed by McArthur Road Seven-Eleven Store in Fayetteville and was familiar with the fact that $125.00 was always placed in the floor safe when the store closed at night. He had been instructed not to resist a robbery and did not own or carry a gun.

Just before 7:00 a.m. on the same morning, deceased Norma Ehrhart left her home to pick up a few groceries at the Seven-Eleven Store. About the same hour, Clarence Hilliard and Janice Whitten left for work together and planned to stop at the same store to pick up some cigarettes. They pulled up outside the store at 7:10 a.m. Both of them noticed a yellow Maverick automobile parked alongside their car, and shortly thereafter saw a light-complexioned black man come out of the store and get in the driver's side of the Maverick automobile. Clarence Hilliard waited in the car while Janice Whitten got out and headed for the double-door entrance-way. As she reached the doors, she observed a dark-complexioned black man come out of the store and head for the Maverick. Janice Whitten later identified the defendant as this man.

Janice Whitten walked into the store and noticed no clerks in sight and that it was very quiet. She waited a while and another customer came in. While she was talking to the other customer, they heard muffled, moaning sounds coming from the back storage room. They went to the storage room door and opened it. There Janice Whitten saw Larry Lovett, lying on his left side, bleeding from his head and stomach. Close by lay Norma Ehrhart, also bleeding. Both had been shot and were breathing faintly. Janice Whitten ran to the front of the store to call the police and summon Clarence Hilliard. When she came back to the storeroom, she bent over Larry Lovett to inquire about his condition. He responded "I've been shot, I've been shot in the gut . . . Didn't you see them?" By this time Clarence Hilliard was in the storeroom asking Larry Lovett what happened. Larry replied, "didn't you see them, the two Black dudes?"

Soon thereafter, officers from the Sheriff's department arrived. Norma Ehrhart appeared to be dead and Larry Lovett was still struggling. Ambulances took them to the hospital where both were pronounced dead on arrival. It was determined that

$124.89 had been taken from the floor safe. Janice Whitten and Clarence Hilliard told the officers what they had seen in the store but did not mention the two black males they had seen leaving in the yellow Maverick. Later the same day when they heard of the death of Larry Lovett, they went to the Law Enforcement Center and reported that they had seen two black men leaving the scene.

Four days later, they returned to the Center and each identified the defendant separately from photographs. As a result of this identification, defendant was arrested that night, as well as his co-defendant Gregory Cousin.

The next day, 12 August 1975, a lineup was held in which the defendant was one of six persons shown to Janice Whitten and Clarence Hilliard. They observed the lineup separately, but neither was able to positively identify the defendant, although Clarence Hilliard first identified the defendant and later changed his opinion. As a matter of fact, they each identified two other individuals.

Sometime before 7 August 1975, Martha Ann Mack and her boyfriend, Rodney Harris, had gone with the defendant and Gregory Cousin in Cousin's yellow Maverick to a bank in Fayetteville for business purposes. After Martha Ann Mack and Rodney Harris had gotten out of the vehicle, Martha noticed that Harris had her pistol in his pocket. She suggested that he not carry it into the bank so he returned with the gun to the car. The day before 7 August 1975, Martha Ann Mack went to the hospital to see her boyfriend, Rodney Harris. When she inquired about her pistol, he told her he had left it in the yellow Maverick.

On the evening of 7 August 1975, the defendant and Gregory Cousin went to Martha Ann Mack's trailer to return the gun. It was later determined that bullets from this gun killed Larry Lovett and Norma Ehrhart. While at the trailer, Cousin told Martha Ann Mack in the presence and hearing of the defendant that they were responsible for the Seven-Eleven robbery and murders. She questioned his statement and Cousin suggested that she listen to the 11:00 p.m. news which appeared on television shortly thereafter and this was done.

A short time after defendant visited Martha Ann Mack, he went to see his girlfriend, Geraldine Parker. He was nervous

and indicated that he had something to tell her. After a few hours he told her he had shot someone who held a gun on his partner. He suggested that she keep the yellow Maverick for a while in Vass, North Carolina and told her that he would leave the State. The next afternoon when Geraldine again saw the defendant, he gave her more details about the shooting and told her he was going to New Orleans to get rid of the car. He left her but was arrested before departing for New Orleans. The next morning Geraldine Parker called the Sheriff's Department and gave them the information she had received.

The defendant offered no evidence.

Other facts necessary to the decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Associate Attorney Elizabeth C. Bunting for the State.*

*Charles H. Burgardt for defendant appellant.*

COPELAND, Justice.

[1] During the jury selection process, defendant contends the court erred in allowing the district attorney to challenge peremptorily juror Christa E. Arnold after the district attorney had passed her as a juror.

On the first day of the trial, this juror was examined at length by counsel for the defendant and the district attorney.

From the outset, it should be noted that Miss Arnold was of German ancestry and had difficulty speaking and understanding the English language. When asked by the district attorney if she could vote to convict knowing that the penalty would be death, she responded affirmatively and thereupon was tendered by the prosecution. Under questioning by defense counsel, Miss Arnold indicated that she could not follow the judge's instructions if they conflicted with her personal beliefs on capital punishment but later replied that she would carry out the instructions of the court.

On the next day, when Miss Arnold was examined further by the court, out of the presence of the other jurors, she again equivocated on the question of her ability to follow the judge's instructions, reversing her position twice. She first stated that

she could not "pass a death sentence on anyone," but when the judge sought more details, replied that if she believed a person was guilty of murder beyond a reasonable doubt, she could vote for a verdict of guilty knowing that the law required a sentence of death. At the request of the district attorney before impanelment, the court permitted her to be challenged peremptorily.

**[2]**  G.S. 9-21(b) provides in pertinent part that:

> "The State's challenge, peremptory or for cause, must be made before the juror is tendered to the defendant."

Justice Huskins, speaking for our Court on the problem that here concerns us in *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537 (1976), determined that G.S. 9-21(b) "does not deprive the trial judge of his power to closely regulate and supervise the selection of the jury to the end that both the defendant and the State may receive a fair trial before an impartial jury." *McKenna, supra* at 679, S.E. 2d at 545. Nothing in G.S. 9-21(b) limits the trial court's discretion to allow the State, before the jury is impaneled, to challenge either peremptorily or for cause a prospective juror previously accepted by the State and tendered to the defendant. *State v. McKenna, supra; see State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975).

When the district attorney passed the juror, she had made no inconsistent statements. It was only later under questioning by the defense attorney and the trial judge that contradictions became apparent. Certainly, under the circumstances, the trial judge did not abuse his discretion in allowing the district attorney's motion. The trial court has a duty to insure the continued as well as the initial competency of jurors. *See State v. McKenna, supra; State v. Waddell, supra.* This assignment of error is without merit and overruled.

**[3]**  Under Assignment of Error No. 2 the defendant argues that the court erred in refusing to grant defendant's motion to produce documents relating to the offer of a reward.

G.S. 15A-802 of the Criminal Procedure Act governs motions of this type and provides that the subpoenas "must be issued and served in the manner provided in Rule 45 of the Rules of Civil Procedure, G.S. 1A-1."

Apparently while the jury was being selected, a subpoena was issued on 15 December 1975 by the Clerk of Superior Court

of Cumberland County, and served on the Southland Corporation, the owner of the Seven-Eleven, on 16 December 1975. At a *voir dire* examination of Mr. Khoeler, District Manager of Southland Corporation, conducted on 16 December 1975, Mr. Khoeler indicated that the Southland Corporation had offered a $10,000 reward for information leading to the arrest and conviction of any individual involved in the Seven-Eleven Store robbery on 7 August 1975. He disclosed that the reward was being handled by the Texas office of the Southland Corporation. Mr. Khoeler testified that two people, whose names he did not recall, had come to his office about the reward and that he advised each of them to talk to the Sheriff's Department and then submit a written claim for the reward to the Southland Corporation in Dallas, Texas. Incidentally, this subpoena does not appear to comply with Rule 45, *supra,* in that neither the caption of the case nor the name of the party who requested the subpoena appears on the subpoena.

Defendant sought these documents after the jury selection process had commenced. The defendant was indicted on 2 September 1975 and arraignment and jury selection took place on 15 and 16 December 1975, some three months later. In the interim period, defendant had ample time to request and serve a subpoena duces tecum which he failed to do. Certainly the trial judge was not required to delay the trial until documents or witnesses could come from Texas.

Assuming that counsel for the defendant had complied with Rule 45 and had served his subpoena *duces tecum* earlier, the denial of his motion did not prejudice his trial. Defense counsel contends that he desired these documents to assist him in cross-examining State's witnesses, Clarence Hilliard and Janice Whitten. Apparently, he seeks to show that these witnesses came forward with evidence merely because the reward was offered. The record is clear that Clarence Hilliard and Janice Whitten reported to the Law Enforcement Center on the day of the murders and robbery that they observed two black males leaving the Seven-Eleven Store. Nothing in the record indicates that they knew about the reward money at that time.

If defense counsel wished to know whether any of the State's witnesses had been promised or received a reward, he could have elicited this information on cross-examination. No such inquiry was directed to Clarence Hilliard or Janice Whitten.

Martha Ann Mack was asked about the reward money and stated that she had not made arrangements to collect a portion of the reward. Geraldine Parker on cross-examination indicated that she knew of the reward from the defendant before she went to the Police Station and that she had applied for the reward. The defendant had the benefit of cross-examination as to these witnesses and the jury was thus apprised of the existence of the reward offer. In Judge McKinnon's charge to the jury he instructed that the matter of a reward was "a circumstance that you may consider as it may tend to show any interest on the part of a witness in the outcome of the case. . . . " No prejudice to the defendant appears and the assignment of error is overruled.

[4] Next the defendant contends in Assignment of Errors Nos. 3, 4, and 6, that the court erred in allowing the co-defendant Gregory Cousin to appear in person in the courtroom and be identified by witnesses Clarence Hilliard and Janice Whitten.

The trial judge at a prior term separated the cases of Cousin and the defendant for the purpose of trial. On the morning of 19 December 1975, the district attorney had Gregory Cousin brought into the courtroom to which counsel for the defendant objected. Defendant takes the position that the appearance of co-defendant Gregory Cousin in the courtroom during the course of defendant's trial for the purpose of identification, violated his due process rights under the Fourteenth Amendment of the United States Constitution. For this proposition, he cites no other authority. Defendant argues that to permit co-defendant Cousin, without adequate notice, to be identified by eyewitnesses in defendant's separate trial places an unconstitutional burden upon the defendant to defend againt the validity of the in-court identification of the co-defendant. The defendant says that the identification of Cousin was harmful error because it tended to make defendant look guilty by association.

The argument is novel but we find no merit in it. As noted by Judge McKinnon in denying defendant's motion, "If this man [Cousin] were free in the community, he could be here by subpoena; if he were in prison, he could be here by appropriate court order, and for the purposes stated, . . . [his presence] is neither [a] legal surprise or impropriety. . . . "

In addition, the defendants could have been tried jointly in which case co-defendant Cousin would necessarily have been present and the in-court identification of him unquestionably permissible. To accept defendant's reasoning would be to conclude that joint trials were unconstitutional. This, of course, is not the case. *See State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976).

In the *voir dire* examinations of Clarence Hilliard and Janice Whitten no evidence was offered contradicting Hilliard's or Whitten's ability to identify Cousin and Judge McKinnon was fully justified in allowing the in-court identifications. The identification of Cousin by witnesses Hilliard and Whitten tended to corroborate their identification of the defendant, as the witnesses observed both defendants at substantially the same time and under similar circumstances.

We find no merit in these assignments of error and they are overruled.

[6]  The defendant contends under Assignment of Error No. 5 that the court erred in permitting State's witness Clarence Hilliard to testify as to what the victim, Larry Lovett, said in the Seven-Eleven Store.

The defendant argues that for this testimony to be admissible it must fall within the dying declaration exception to the hearsay rule.

G.S. 8-51.1 (Cum. Supp. 1975) provides as follows:

"The dying declarations of a deceased person regarding the cause or circumstances of his death shall be admissible in evidence in all civil and criminal trials and other proceedings before courts, administrative agencies and other tribunals to the same extent and for the same purposes that they might have been admissible had the deceased survived and been sworn as a witness in the proceedings, subject to proof that:

"(1) At the time of the making of such declaration the deceased was conscious of approaching death and believed there was no hope of recovery;

"(2) Such declaration was voluntarily made."

The record discloses that Larry Lovett appeared to be in great pain, was bleeding from his head and stomach, and having

difficulty breathing. The record further reveals that Larry Lovett was aware of his substantial injury. When Janice Whitten saw Larry Lovett on the floor of the storeroom he told her "I've been shot, I've been shot in the gut . . . Didn't you see them?" This testimony was not objected to by the defendant. When Deputy Sheriff Roy Baker arrived and asked Larry Lovett who was responsible, Larry replied, "Two black dudes; oh, I can't breathe." This testimony also was entered without objection. Defendant objected to the admission of Larry Lovett's statement to Clarence Hilliard, "Didn't you see them, the two Black dudes?"

[5] The admissibility of a declaration as a dying declaration is a question to be determined by the trial judge, and when the judge admits the declaration, his ruling is reviewable only to determine whether there is evidence tending to show facts essential to support it. *State v. Brown,* 263 N.C. 327, 139 S.E. 2d 609 (1965). Under the new statute, the declaration must have been voluntary and made when the declarant was conscious of approaching death and without hope for recovery. It is the requirement that the declarant be aware of his impending death that has most often concerned the courts under the case law and now concerns us under the statute. We note, without deciding, that the words "no hope of recovery" in the statute may make the statutory exception to the hearsay rule more restrictive than existing case law. However, we believe that on the facts of this case, the declarant Larry Lovett must have believed there was no hope for recovery. It is not necessary for the declarant to state that he perceives he is going to die. If all the circumstances, including the nature of the wound, indicate that the declarant realized death was near, this requirement of the law is satisfied. *State v. Brown, supra.*

[6] The evidence shows that when Larry Lovett made the remark in question, he was on the storeroom floor "squirming and wiggling around and evidently in great pain," "yelling, 'Help me, please,' " experiencing difficulty breathing, and bleeding from multiple gunshot wounds of the head and stomach regions. These wounds were of such a nature that, taken with the fact that Larry Lovett died en route to the hospital, the trial judge could justifiably conclude that the declarant Larry Lovett realized his death was imminent and that there was no hope of recovery. See G.S. 8-51.1, *supra;* 1 Stansbury's N. C. Evidence, § 146 (Brandis Rev. Supp. 1976) at 151.

Moreover, Lovett's statement to Hilliard implicating two "black dudes" is admissible as a spontaneous utterance.

> "When a startling or unusual incident occurs, the exclamations of a participant or a bystander concerning the incident, made spontaneously and without time for reflection or fabrication, are admissible." 1 Stansbury's N. C. Evidence, § 164 (Brandis Rev. 1973) at 554; *see State v. Deck,* 285 N.C. 209, 203 S.E. 2d 830 (1974).

Only seconds elapsed between the time the killers left the store and Janice Whitten and Clarence Hilliard's discovery of Larry Lovett. Over defendant's objection, Hilliard testified that Larry Lovett told him that "[t]wo Black dudes" had done it. Without objection, Deputy Sheriff Baker was permitted to testify to the same thing. *Ipso facto,* there can be no prejudicial error since the same evidence, received from Deputy Sheriff Baker, appears in the record without objection. *State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976), decided this day; *State v. Creech,* 265 N.C. 730, 145 S.E. 2d 6 (1965). At any rate, we feel that the statement satisfies both the law as to a spontaneous utterance as well as a dying declaration, and this assignment of error is overruled. 1 Stansbury's N. C. Evidence, §§ 146, 164 (Brandis Rev. 1973, Supp. 1976).

[7] In Assignment of Error No. 7 defendant argues that it was error to permit the witness Janice Whitten to identify in court the defendant Bobby Bowden.

Upon objection to the in-court identification, Judge McKinnon conducted an extensive *voir dire* and made appropriate findings and conclusions. At a *voir dire* hearing, the trial judge must determine whether an illegal out-of-court identification took place. If he so finds, the judge must then decide whether the in-court identification is tainted by the illegal out-of-court procedure or whether it is based on the witness' independent observation at the crime scene. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974).

The trial court found, and this finding is supported by the evidence, that no illegal pretrial identification procedure had been conducted. Thus, it was not necessary to examine the witness on her opportunity to observe at the crime scene. Janice Whitten picked out the defendant's picture during a properly conducted photographic procedure. The following day at a lineup

she was unable to correctly identify the defendant. Janice Whitten's inability to select the defendant at the lineup did not render the lineup impermissibly suggestive and thus illegal; in fact, it tends to prove the contrary. As the trial court correctly observed, Miss Whitten's misidentification at the lineup goes to her credibility as a witness.

Although not required under the circumstances, Judge McKinnon heard evidence and made findings on Miss Whitten's opportunity to observe the defendant at the crime scene. The evidence revealed that Miss Whitten looked the defendant in the face for four or five seconds as she approached the door and, as she expressed it, was so close that she "could have kissed him." She described him as well as his clothes and recalled that his skin was very dark. She explained that the outside lights of the store were on and that she had described the defendant to the sheriff's deputies on the day of the crime.

Counsel for the defendant fully exploited in the presence of the jury Janice Whitten's failure to identify the defendant at the lineup. The jury could have chosen not to believe Janice Whitten but instead they accepted her identification. This was the jury's decision to make and cannot be attacked here. The assignment of error is overruled.

**[8]** As his Assignment of Error No. 8 defendant contends it was error to permit Martha Ann Mack to testify concerning statements made by co-defendant Gregory Cousin in the presence of the defendant. On the evening of the two murders and robbery, the defendant and his co-defendant, Gregory Cousin, went to the trailer home of their friend Martha Ann Mack to return her gun. When they arrived, they went directly to Martha's bedroom where defendant and Cousin were so close to Martha Ann Mack that she could have "reached out and touched both of them . . . "

Prior to receiving the ensuing conversations into evidence, Judge McKinnon excused the jury and held a *voir dire*. In the bedroom, Cousin stated that "they had robbed the Seven-Eleven Store." Martha Ann Mack indicated that she did not believe him and Gregory Cousin replied: "If you don't believe me, come on, it should be on televison." All three went to the front room and watched a news broadcast in which the Seven-Eleven robbery was described. They observed on the telecast a body being taken from the Seven-Eleven Store. The television news

indicated that two people were in custody, whereupon, Cousin remarked that: "[T]hey had the wrong people because they . . . did it." Cousin also said with regard to the woman who was killed in the Seven-Eleven Store: "[S]he was stupid if she thinks he would let her live and testify because he wasn't going back to jail again."

The defendant was present during these conversations and all the evidence indicated that he was in a position to hear and understand what was said, and that he said nothing.

There was some evidence that the defendant had been drinking. Martha Ann Mack said on cross-examination that the defendant "had a little to drink, but he wasn't drunk." Later in the *voir dire* the defendant called to the stand Linda Pratt, who was present in the trailer when the defendant and Cousin arrived and confirmed that the two defendants and Martha Ann Mack went to the bedroom. However, she denied hearing any news on television. Judge McKinnon overruled the objection to Martha Ann Mack's testimony, deciding it was for the jury's determination. The foregoing testimony of Martha Ann Mack was then related to the jury.

Co-defendant Cousin's statements, if admissible at all, are admissible as an admission by silence.

"If a statement is made in a party's presence under such circumstances that a denial would naturally and properly be expected if the statement were untrue, silence or failure to deny is admissible against him as an implied admission.

"The mere fact that the statement was made in the party's presence is not enough. It must be shown that he was in a position to hear and understand what was said . . . the circumstances . . . must have been such that a person in his position would be expected to deny it at the time if it were untrue." 2 Stansbury's N. C. Evidence, § 179 (Brandis Rev. 1973) at 50-53.

The statements made by co-defendant Cousin concerning the robbery in which he referred to "we" were of such a nature as would require the defendant to deny them if they were false. On all occasions defendant was present and in close proximity to Cousin and Martha Ann Mack. All the requirements for admissibility were met and Judge McKinnon correctly ruled

that these statements were for the jury to consider. This assignment of error is overruled.

The defendant says under Assignment of Error No. 9 that the trial court should have allowed his motion for nonsuit at the close of the State's evidence.

On a motion for nonsuit the evidence must be considered in the light most favorable to the State, giving such evidence the benefit of every reasonable inference to be drawn from it. *State v. Hunter,* 290 N.C. 556, 227 S.E. 2d 535 (1976) ; *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976).

[9] The evidence when considered in the light most favorable to the State shows the following: (1) On the early morning of 7 August 1975, Larry Lovett and Norma Ehrhart were found fatally injured in the storeroom of the McArthur Road Seven-Eleven Store; (2) A sum of money had been taken from the floor safe of the store; (3) Defendant was seen leaving the store just prior to the discovery of the injured persons; (4) Lovett told two witnesses that two "black dudes" were responsible; (5) Defendant had been seen often in the past in the company of a person who owned a yellow Maverick automobile; (6) This person (Cousin) and the defendant had possession of a gun during the time of the robbery which later proved to be the murder weapon; (7) Defendant's friend (Cousin) stated in defendant's presence that they were responsible for the robbery and killings and the defendant did not deny it, and (8) Defendant told his girl friend (Geraldine Parker) that he was responsible for the crime and that he was going to leave in order to get rid of the car. There was substantial circumstantial and direct evidence linking the defendant to the robbery and killing of Lovett and Ehrhart at the Seven-Eleven Store. The able trial judge was entirely correct in overruling the motion for nonsuit.

Judge McKinnon charged the jury on the felony-murder rule. The defendant assigns this as Error No. 10 because the evidence was insufficient.

The exception noted is broadside in that no specific portions of the charge are set out with which the defendant disagrees. The contentions of the defendant on this assignment of error are nothing more than a repetition of the argument advanced on his motion for nonsuit. The assignment is without merit and overruled.

State v. Bowden

[10]  Defendant's last assignment of error attacks the imposition of the death penalty. In *Woodson v. North Carolina*, ____ U.S. ____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975) under which defendant was indicted, convicted, and sentenced to death. By authority of the provisions of 1973 Sess. Laws, c. 1201 § 7 (1974 Session), a sentence of life imprisonment is substituted for the death penalty in this case. We, therefore, deem it unnecessary to discuss further this assignment of error.

[11]  The jury returned a verdict of guilty as to the charge of armed robbery. The trial judge properly did not enter judgment as to that charge since it conclusively appears that proof of the armed robbery was an essential element in the capital offense of murder in the first degree. The armed robbery charge, therefore, became a part of and was merged into the murder charges. *State v. Williams*, 290 N.C. 770, 228 S.E. 2d 241 (1976), decided this day; *State v. Lock*, 284 N.C. 182, 200 S.E. 2d 49 (1973) ; *State v. Peele*, 281 N.C. 253, 188 S.E. 2d 326 (1972).

This case is remanded to the Superior Court of Cumberland County with directions (1) that the presiding judge, without requiring the presence of defendant, enter judgments imposing life imprisonment for the two first-degree murders of which defendant has been convicted; and (2) that, in accordance with these judgments, the clerk of superior court issue commitments in substitution for the commitments heretofore issued. It is further ordered that the clerk furnish to the defendant and his attorney a copy of the judgments and commitments as revised in accordance with this opinion.

This case was ably tried by Judge McKinnon. We have searched the record for errors other than those assigned by the defendant and have found none.

In the trial we find

No error.

Death sentence vacated and, in lieu thereof, life sentence imposed.