STATE OF NORTH CAROLINA v. RICHARD E. CABEY

No. 383A82

(Filed 28 January 1983)

**1. Criminal Law § 48— implied admission by silence**

A statement made by a co-perpetrator in defendant's presence that "they" had just robbed a store was competent as an implied admission by defendant where defendant not only failed to deny the statement but had himself just made the same statement.

**2. Criminal Law § 66— identity of co-perpetrator not on trial—relevancy**

In a prosecution for the armed robbery of a jewelry store, the identification of a photograph of a man not on trial as depicting the shorter of the two robbers was relevant and not impermissibly prejudicial to defendant where defendant and the man in the photograph were identified as being together at the jewelry store, and there was evidence that defendant and the other man were together shortly after the robbery, that both men had fruits of the robbery, and that both referred to their joint action in committing the robbery. G.S. 8-97.

**3. Criminal Law § 117.4— accessory after fact—instruction on accomplice testimony not required—interested witness instruction sufficient**

Evidence that a witness was an accessory after the fact did not subject her testimony to rules relating to accomplice testimony so as to require the trial court to give a requested instruction on the duty to examine accomplice testimony carefully. However, the witness was an interested witness, and the trial court's instruction that, in determining whether to believe any witness, the jury should consider "any interest, bias or prejudice the witness may have" was a sufficient instruction on the duty to scrutinize the testimony of an interested witness, although a more detailed instruction concerning the witness's status as an interested witness may have been preferable.

**4. Criminal Law § 117.1— refusal to instruct concerning prior inconsistent statements—no prejudicial error**

The trial court did not commit prejudicial error in failing to give a requested instruction concerning the effect on credibility of prior inconsistent statements made by a State's witness where some of the claimed inconsistencies were merely immaterial omissions which did not constitute an indirect inconsistency; other alleged inconsistencies concerned collateral facts and were of value to defendant, if at all, only to the extent that they tended to affect the jury's judgment as to the credibility of the witness; the jury heard the witness admit during both direct and cross-examination that her first statement was not complete or entirely truthful; and the instruction sought by defendant would have given the defendant no more advantage than this.

APPEAL by the defendant from *Barefoot, Judge,* 25 January 1982 Criminal Session of Superior Court, CUMBERLAND County,

Judgment entered 27 January 1982. The defendant, Richard E. Cabey, was convicted of five counts of armed robbery. The defendant was sentenced to life imprisonment for the guilty verdict on the first count. Counts two, three, four and five were consolidated for judgment and the defendant was sentenced to not less than 20 years nor more than 25 years imprisonment to commence upon the expiration of the life sentence.

From the trial court's sentence of life imprisonment, the defendant appeals to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a). The defendant's motion to bypass the Court of Appeals on counts two through five was allowed on 3 November 1982.

*Rufus L. Edmisten, Attorney General, by W. Dale Talbert, Assistant Attorney General, for the State.*

*James R. Parish, Assistant Public Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant contends that he was prejudiced by the admission of statements by and the identification of the "other" robber and by the trial court's failure to give proper instructions concerning the testimony of a witness who was charged as an accessory after the fact of the robbery. After a careful review of the record and briefs, we find the defendant received a fair trial free from prejudicial error.

The State's evidence tended to show that on 26 May 1981 two males entered the Heritage Jewelry Store in Westwood Shopping Center in Fayetteville, North Carolina. These two men had been in the store twice before during that day. On their second visit, the store manager, Julie Kosma, became suspicious. The two men asked about watches but then stated that they were interested in wedding rings. When they returned the third time, the shorter man told Kosma that he wanted to buy the ring that she had shown him. When she began to gather the paperwork, the shorter man produced a gun and told her if she screamed he would "blow her brains out."

The two men took Kosma to the back of the store where they forced her and two men, Phillip Montaldo and Robert Neitman, to

lie down on the floor. The robbers took a briefcase from Montaldo and, as they tried to open the case, the gun in the shorter man's hand fired. The taller robber used this incident as a warning to the victims. Montaldo had corporate papers in his briefcase and neither the papers nor the briefcase were recovered. The robbers also stole some money, a watch and a ring from Neitman.

The taller robber, later identified as the defendant, took a clerk to the front of the store. When two customers entered, they were threatened and robbed. Finally, a door buzzer rang and the robbers fled. All the watches, gold chains and diamonds in the jewelry store were stolen. An inventory check revealed approximately $94,000 worth of merchandise was taken.

On 6 August 1981, Florence McDuffie pawned a few pieces of jewelry at Ruby's Pawn Shop in Fayetteville. Both Kosma and the store owner, Steve Bertie, separately identified several pieces of jewelry as items that were stolen in the May robbery.

The police arrested McDuffie and charged her with possession of stolen property. McDuffie told the police that she received the jewelry from the defendant Richard Cabey on 26 May 1981. He had approached her in her father's club, where she worked, and introduced her to his partner, Jimmy Hart. Cabey told her that they had just robbed a store and that she would read about it in the morning paper. Hart made a similar statement and Cabey said he was more or less breaking Hart in as his partner. Each man had on a watch and some jewelry. Cabey gave McDuffie some jewelry as payment for a $150 debt that he owed her for the purchase of one-quarter pound of marijuana. McDuffie identified the defendant from a photographic line-up. She had known Cabey since December of 1980. McDuffie was later charged as an accessory after the fact of armed robbery.

From the photographic line-up, Kosma was the only witness to the robbery who could positively identify the defendant. At trial Kosma identified the defendant as the taller of the two robbers. Over objection, Kosma also identified a photograph of Hart as being a photograph of the shorter of the two robbers. Montaldo testified that he had selected a photograph of Hart, but was not certain of the identification. Hart had not been arrested and was not present at the trial of the defendant.

The defendant offered no evidence.

[1]   The defendant filed a motion in limine to exclude any hearsay conversation between the co-perpetrator of the robbery, Jimmy Hart, and third parties. This motion was denied. At trial, Florence McDuffie was allowed, over objection, to testify as to statements Hart made to her. Due to the nature and circumstances of the conversation, the evidence was properly admitted.

McDuffie testified that on 26 May 1981 the defendant and Hart approached her in her father's club. The defendant introduced Hart as his partner and stated that they had just robbed a store and that she might read about it in the morning newspaper. McDuffie then testified that Hart said "the same thing that Cabey said and that they should have got the safe and all that." The defendant argues that this statement does not meet the requirements of an implied admission and should have been excluded as impermissible hearsay.

For a statement to be admissible as an implied admission, it must have been made in the person's presence under such circumstances that a denial of an untrue statement would be naturally expected, and it must be shown that the person against whom the implied admission is used was in a position to hear and understand the statement and that he had the opportunity to speak. *State v. Spaulding*, 288 N.C. 397, 406, 219 S.E. 2d 178, 184 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3210 (1976). McDuffie testified that the defendant and Hart approached her and stated that "they" had just robbed a store. Her testimony indicated that she, the defendant and Hart were involved in a three-way conversation at that time. The trial court ascertained from the witness that the defendant was present when Hart made the statement. While a more complete showing could have been made, these facts are sufficient to formulate an implied admission.

While an implied admission makes a hearsay statement admissible because of the implication derived from the defendant's silence or failure to deny the statements, the present situation presents an even stronger argument for admissibility. The statement by Hart about which McDuffie testified was the same statement that the defendant had just made to her. The only

additional information contained in Hart's statement was a reference to their failure to empty the safe. This insignificant variance cannot detract from the admissibility of the testimony. The witness merely stated that, in the defendant's presence, Hart made the same statement that the defendant had just made. This testimony is clearly admissible.

[2] The defendant also assigns as error the identification by several witnesses of the shorter robber from a photograph of Jimmy Hart. Kosma identified Hart from a photographic line-up and testified at trial that Hart was the shorter of the two robbers. She also displayed the photograph to the jury. Montaldo testified that he described the features of both robbers and that he selected a couple of photographs from the photographic line-up that he thought resembled one of the robbers. Detective Gloria Royal testified, over objection, that she conducted the photographic line-up and that both Kosma and Montaldo selected photographs of Hart but that Montaldo said he was not sure of his identification. The defendant contends that the identification of Hart was irrelevant because Hart was not being tried as a co-defendant and the identification was an impermissible attempt by the State to influence the jury with a theory of guilt by association. We find the evidence relevant and properly admitted.

In *State v. Bowden*, 290 N.C. 702, 228 S.E. 2d 414 (1976), two men robbed a store and killed two people. The two men received separate trials. At his trial the defendant Bowden objected to the presence of the co-perpetrator and to the witnesses' identification of the co-perpetrator. The defendant argued that the identification violated his due process rights under the Fourteenth Amendment to the Constitution of the United States because of surprise and that such a violation was harmful error because it suggested guilt by association. This Court held that the identification was proper and corroborated the witnesses' identification of the defendant because the witnesses saw the defendant and the co-perpetrator "at substantially the same time and under similar circumstances." *Id.* at 711, 228 S.E. 2d at 420. The identification of Hart has even greater relevance and reliability than the identification in *Bowden.* Not only were the two men identified and seen together at the jewelry store, another witness, McDuffie, testified that she saw the two together shortly after the robbery. At that time, both men had fruits of the crimes charged and both

referred to their joint actions in committing the robbery. Therefore, the identification of Hart as the shorter of the two robbers was relevant and not impermissibly prejudicial to the defendant.

The use of the photograph for the witnesses' identification of Hart was not improper as Hart had not been arrested and was not present at the trial. Photographs may be used for illustrative purposes, and, upon laying a proper foundation and meeting applicable evidentiary requirements, may be used as substantive evidence. G.S. 8-97.

[3] The defendant also assigns as error the failure of the trial court to instruct, pursuant to a written request by the defendant, that McDuffie was an accomplice and that her testimony therefore should be carefully examined. McDuffie was charged with possession of stolen goods and accessory after the fact of armed robbery. The elements of the crime of being an accessory after the fact are separate and distinct from those involved in the crimes of being a principal or an accessory before the fact. G.S. 14-7 (accessories after the fact), former G.S. 14-5 (accessories before the fact, applicable to all offenses committed before 1 July 1981) and G.S. 14-5.2 (accessories before the fact, applicable to all offenses committed on or after 1 July 1981). Evidence that a witness was an accessory after the fact does not subject her testimony to rules relating to accomplice testimony. *State v. Eakins*, 292 N.C. 445, 233 S.E. 2d 387 (1977). Therefore, the failure to give the requested instruction was not error.

Although the defendant only specifically requested an instruction on the closer review of McDuffie's testimony based on a theory of testimony by an accomplice, McDuffie was an interested witness and a jury should be advised of the special scrutiny required for the testimony of such a witness. In the charge to the jury, the trial court stated that the jury must judge the credibility of each witness and, in determining whether to believe any witness, the jury should consider, among other factors, "any interest, bias or prejudice the witness may have." While a more detailed instruction concerning McDuffie's status as an interested witness may have been preferable, the instruction given was sufficient and was not error.

[4] ·Finally, the defendant assigns as error the trial court's failure to give a requested instruction concerning prior inconsistent statements made by McDuffie. At trial, McDuffie testified that she had not given a complete and totally accurate statement to the police when she was first arrested. She testified that her second statement and her trial testimony were more detailed and correct. The defendant cross examined McDuffie as to the variances between her first statement and her testimony and requested that the court instruct the jury as to the effect on credibility of inconsistent statements. The trial court did not include the requested instruction in its charge.

Some of what the defendant claims are inconsistencies in McDuffie's statements are merely omissions. Initially, she did not tell the police that Cabey gave her the jewelry as payment of a debt from a marijuana purchase. The defendant contends that such an omission constitutes an indirect inconsistency. We disagree. An omission may be termed an indirect inconsistency only when the declarant fails to mention a material circumstance which it would have been natural to include in the statement. *State v. Mack*, 282 N.C. 334, 340, 193 S.E. 2d 71, 75 (1972). The marijuana debt may be the reason that Cabey gave McDuffie the jewelry, but it is simply a further explanation of his actions and not such a material circumstance that the omission of that fact constituted an indirect inconsistency.

It appears from the record, although it is not at all clear, that there were some additional variances between McDuffie's first statement to law enforcement officers and her testimony at trial. However, the defendant did not include the transcript, excerpts from McDuffie's actual trial testimony or McDuffie's original statements to the authorities in the record on appeal. Because of the defendant's failure to provide a more complete record, it is impossible to discern precisely how the defendant contends that the earlier statements of McDuffie varied from her trial testimony. Nevertheless, we have undertaken insofar as possible to review the defendant's contentions in this regard. The primary facts as to which the defendant contends McDuffie's trial testimony differed from her earlier statements seem to involve the number of pieces of jewelry that the defendant gave to McDuffie and whether a stolen ring was actually sold to pay for her bond. Variances in statements of the witness with regard to

such collateral facts were not in themselves helpful to the defendant, as the facts with regard to which the testimony is alleged to have varied were not in any way controlling on the issues presented at trial. Such variances were of value to the defendant, if at all, to the extent that they tended to affect the jury's judgment concerning the witness's credibility. Here, the jury heard the witness admit during both direct and cross examination that her first statement was not complete or entirely truthful. Therefore, the defendant had the full value of the jury's having been made aware of a prior statement by the witness which was not entirely consistent with the witness's trial testimony or entirely truthful. The instruction sought by the defendant would have given the defendant no more advantage than this.

As the defendant's assignment of error relative to the trial court's failure to give the requested instruction concerning prior inconsistent statements by the witness involves a purported error relating to rights arising other than under the Constitution of the United States, the burden is upon the defendant to show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." G.S. 15A-1443. For the foregoing reasons, we find that the defendant has entirely failed to carry this burden and that there is no reasonable possibility that a different result would have been reached at trial had this purported error not occurred. This is particularly true in light of the other compelling evidence, including eyewitness testimony, admitted against the defendant at trial.

We hold that the defendant received a fair trial, free from prejudicial error.

No error.