STATE OF NORTH CAROLINA v. ALICE A. GALLAGHER

No. 496A84

(Filed 27 February 1985)

1. Constitutional Law § 51— pre-indictment delay—no denial of speedy trial or due process

Defendant's Sixth Amendment right to a speedy trial was not violated by a five-year delay between a killing and her indictment for murder since the Sixth Amendment speedy trial provision has no application until the defendant in some way becomes an "accused," and the period of delay complained of by defendant was prior to her having been "accused" by arrest or formal charges. Further, defendant's right to due process was not violated by the delay where defendant made no showing that the delay actually prejudiced the conduct of her defense or that it was engaged in by the prosecution deliberately and unnecessarily in order to gain tactical advantage over her.

2. Criminal Law § 15.1— pretrial publicity—denial of change of venue

The trial court properly denied defendant's motion for a change of venue of her trial for murder and conspiracy to murder based on pretrial publicity where newspaper articles offered in support of the motion were factual and non-inflammatory.

3. Criminal Law §§ 80.1, 89.2— telephone bills—admission for corroboration—authentication not necessary

Copies of telephone bills were admissible for the purpose of corroborating a witness's testimony that he made telephone calls from his father's number to other numbers at particular times without testimony concerning the accuracy of the copies of the bills by the owner of the residence to which the original bills were sent.

4. Homicide § 18.1— ill will between defendant and victim—competency to show premeditation, deliberation and intent

In a prosecution of defendant for the murder of her husband, testimony by a witness that defendant made statements a few months before her husband's death that she hated her husband and wished he was dead was competent to show premeditation, deliberation, motive and intent.

**5. Criminal Law § 65; Homicide § 15— defendant's failure to grieve at husband's funeral—admissibility of opinion**

In a prosecution of defendant for murder of her husband and conspiracy to murder her husband, a witness was properly permitted to state his opinion that defendant did not appear to be grieving at the funeral of her husband.

**6. Criminal Law § 89.9— prior statement witness believed to be untrue—admissibility for impeachment**

Testimony by defendant that she had made a prior statement under oath in an affidavit which she believed to be untrue was admissible to impeach her and cast doubt upon her credibility even if the prior statement under oath was in fact correct.

**7. Criminal Law § 89.2— cross-examination of defendant—use of insurance proceeds—competency for corroboration**

Cross-examination of defendant about her use of life insurance proceeds from her husband's death to purchase a home was competent to corroborate the testimony of a State's witness that he and defendant planned to murder defendant's husband in part from a desire to obtain insurance proceeds to purchase a house in which the two of them would live.

**8. Criminal Law § 86.5— acts of misconduct—admission not prejudicial error**

Even if cross-examination of defendant about men she had lived with but not been married to after her husband was killed was improper for impeachment purposes, such error was not prejudicial to defendant where there was no reasonable possibility that the jury's verdict was influenced thereby.

**9. Homicide § 2— indictment for murder—conviction of accessory before the fact**

Defendant could be convicted as an accessory before the fact to murder on an indictment charging murder where the offense occurred on 1 October 1978, since under G.S. 14-5.2 defendant's case was controlled by the laws in effect at the time the offense was committed, former G.S. 14-5.1 did not apply because it had been repealed prior to defendant's indictment, and prior to 1 October 1979 the law of this state was that defendant could be tried as an accessory before the fact on an indictment charging the principal felony.

**10. Conspiracy § 3; Criminal Law § 10— conviction for conspiracy and accessory before the fact**

Defendant could properly be convicted and sentenced for both conspiracy to commit murder and accessory before the fact to murder since each offense contains an essential element not a part of the other.

**11. Conspiracy § 6; Criminal Law § 10.2— conspiracy to murder—accessory before the fact—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of conspiracy to murder her husband and accessory before the fact to the murder of her husband.

Justice VAUGHN took no part in the consideration or decision of this case.

APPEAL by the defendant from judgments entered by *Judge Charles B. Winberry* at the March 27, 1984 Session of Superior Court, CRAVEN County.

The defendant was charged in separate bills of indictment with murder and conspiracy to commit murder. She entered a plea of not guilty to each charge. The jury found her guilty as an accessory before the fact to murder and of conspiracy to commit murder. By judgments entered March 30, 1984, the defendant was sentenced to life imprisonment for her conviction as an accessory before the fact to murder and to a ten year term of imprisonment for her conviction for conspiracy to commit murder.

The defendant appealed her conviction as an accessory before the fact to murder and the resulting life sentence to the Supreme Court as a matter of right. Her motion to bypass the Court of Appeals on her appeal from her conviction and ten year prison sentence for conspiracy to commit murder was allowed on August 31, 1984. Heard in the Supreme Court on December 13, 1984.

*Rufus L. Edmisten, Attorney General, by William N. Farrell, Jr., Assistant Attorney General, for the State.*

*John E. Nobles, Jr. for the defendant appellant.*

MITCHELL, Justice.

The defendant has brought forward numerous assignments of error on appeal. She contends that the trial court admitted certain evidence improperly. She also contends that she was denied the constitutional right to a speedy trial, and that the trial court's denial of her motion for a change of venue due to adverse pretrial publicity denied her a fair trial. She further contends that the trial court erred by permitting the jury to render a verdict finding her guilty as an accessory before the fact to murder based upon the indictment for murder and by entering judgments against her for both conspiracy and being an accessory before the fact. An extensive review of the evidence at trial is unnecessary in resolving these issues.

The evidence for the State tended to show among other things that the defendant, Alice A. Gallagher, married Thomas S. Gallagher in 1973. During the marriage both parties began having extramarital activities with various other people on a regular

basis. The defendant met Samuel Lancaster in 1977. During the times when Thomas Gallagher, a member of the United States Marine Corps, was on assignment overseas, Lancaster lived with the defendant. Sometime in 1978, the defendant began to make statements to Lancaster that she wished her husband was dead. She asked if Lancaster knew a "hit man." In the months that followed, she talked more and more about her desire for her husband to have an "accident" and not return from overseas. The defendant ultimately told Lancaster of her plan as to how they would kill her husband. She proposed that they hit Thomas Gallagher in the head and place him in a bathtub to drown. Her plan was to make it appear that he had accidentally slipped, knocked himself unconscious and drowned.

Approximately six months prior to Thomas Gallagher's death on October 1, 1978, an additional $100,000 of life insurance was placed on his life with the defendant as beneficiary. The defendant told Lancaster in detail of her plans for using the insurance proceeds after they killed her husband. On one occasion, Lancaster went with her to look at a home she wished to purchase with the insurance proceeds, and she stated to him that they would have to go ahead and kill her husband. The defendant and Lancaster discussed in detail the alibis they would establish for the time of the murder.

Shortly before the actual killing of Thomas Gallagher on October 1, 1978, Lancaster decided that it would be better if the defendant and her two children were not present when the killing occurred. Lancaster was alone with Thomas Gallagher when he struck Gallagher on the head with a frying pan. The frying pan shattered over Thomas Gallagher's head but did not render him unconscious when Lancaster struck him. The two men struggled, and Lancaster pulled a pistol from his belt and shot Gallagher causing his death.

The defendant offered evidence at trial. Her testimony was in the nature of alibi evidence.

Other evidence at trial is discussed hereinafter where necessary to a discussion of the assignments of error.

[1]  The defendant first assigns as error the trial court's denial of her motion to dismiss on the ground that she had been denied the

right to a speedy trial guaranteed her by the Sixth Amendment to the Constitution of the United States. She contends that the delay of five years between the killing on October 1, 1978 and her indictment on October 17, 1983 deprived her of this constitutional right. We do not agree.

The speedy trial provision of the Sixth Amendment "is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." *United States v. Marion*, 404 U.S. 307, 313 (1971). "[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused' . . . ." *Id.* As the period of delay complained of by the defendant was prior to her having been "accused" by arrest or formal charges, the delay could not have violated the speedy trial guarantee of the Sixth Amendment. *Id.*

Further, although the defendant has not raised the issue, we perceive no denial of due process by the delay between the killing of the victim and the indictment of the defendant. *See generally United States v. Lovasco*, 431 U.S. 783, *reh. denied*, 434 U.S. 881 (1977); *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981). The defendant made no showing that the delay actually prejudiced the conduct of her defense or that it was engaged in by the prosecution deliberately and unnecessarily in order to gain tactical advantage over her. *See State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981). To the contrary, the record indicates that Samuel Lancaster, the primary witness against the defendant and the person who actually killed the deceased, made no statement to the police until October 1983. His statement provided evidence required for the indictments against him and the defendant, and she was indicted less than a month after it was received. Therefore, the defendant would have been entitled to no relief on due process grounds under this assignment of error, even had she sought such relief.

[2] The defendant next contends that the trial court erred by denying her pretrial motion for change of venue. She argues that adverse pretrial publicity prevented her receiving a fair trial in Craven County. The defendant attached several newspaper accounts of the killing and the investigation to her pretrial motion. These articles were made a part of the record on appeal. No other evidence was offered in support of the motion.

A motion for change of venue is addressed to the sound discretion of the trial court and its ruling will not be overturned on appeal absent an abuse of discretion. *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981). Our review of the articles in question indicates that, as in *Oliver*, the articles were factual and noninflammatory. Accordingly, they do not provide a basis for holding that the trial court abused its discretion in denying the defendant's pretrial motion for change of venue. *State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339 (1983).

The defendant next assigns as error the trial court's admission into evidence of copies of two telephone bills sent to the residence of the father of the witness Samuel Lancaster. She argues that the copies were not verified by the father and that the father was deceased. The defendant argues that, as a result, a proper foundation had not been established for the admission into evidence of the copies.

[3] Samuel Lancaster testified without objection that he made certain telephone calls from his father's residence to certain other telephone numbers. The State specifically tendered the copies of the telephone bills only for the limited purpose of corroborating this testimony by Lancaster. We perceive no error in the trial court's action in permitting the copies of the telephone bills to be introduced for the purpose of corroborating Lancaster's testimony that he made the telephone calls from his father's number to certain other numbers at particular times. The absence of testimony concerning the accuracy of the copies of the bills by the owner of the residence to which the original bills were sent, would, if anything, tend to go to the weight and credibility to be given the copies and not to their admissibility for purposes of corroborating the independent recollection of the witness. This assignment is overruled.

[4] The defendant next assigns as error the action of the trial court in admitting certain testimony of Patricia Bass. Bass testified in pertinent part that she had conversations with the defendant during the spring of 1978 during which the defendant made statements to the effect that: "She did not like her husband, she hated her husband, she said she wished he was dead." These statements by the defendant a few months before her husband's death were evidence of ill will between the defendant and the vic-

tim, and "this Court has long allowed evidence of ill will between the defendant and the victim as tending to show premeditation and deliberation, motive and intent." *State v. Alston*, 307 N.C. 321, 328, 298 S.E. 2d 631, 637 (1983). The trial court did not err in admitting this testimony by the witness Bass.

[5] The defendant also contends that the trial court erred in admitting certain testimony of the defendant's witness Charles Willis during cross examination by the prosecutor. The questions and answers leading to the testimony complained of were as follows:

Q. Did you have an occasion to see Alice Gallagher at that funeral?

A. Yes, I did.

Q. Did you make any observations or notice anything about her appearance or the way she acted?

A. David, in fairness, my observations at this stage of the game might be biased and I wouldn't want to pass that, if you don't mind.

Q. Would it be safe to say that in your opinion Alice Gallagher did not act like the grieving widow?

MR. NOBLES: Objection, Your Honor.

THE COURT: Overruled.

Q. (Mr. McFadyen) I realize, sir, that you'd rather not say, but of course this is very important, that the jury understand all of the facts surrounding this case.

A. Looking at as I would have felt, I must admit that I was—just didn't seem like that everything was there, but there again, this is my personal opinion.

Assuming *arguendo* that this convoluted answer by the witness was comprehended by the jury as meaning that the defendant did not appear to be grieving at the funeral of her husband, we perceive no error in its admission into evidence. "The emotion displayed by a person on a given occasion is a proper subject for opinion testimony by a non-expert witness." *State v. Looney*, 294 N.C. 1, 14, 240 S.E. 2d 612, 619 (1978). *See generally State v. Moore*, 276 N.C. 142, 171 S.E. 2d 453 (1970).

**[6]** The defendant also assigns as error the action of the trial court in permitting the prosecutor to question her about a prior sworn affidavit she had given to an insurance company stating that her marriage to the deceased had been "without interruption." The defendant argues that she was never divorced from her husband and that the statement in the affidavit was, therefore, true. She argues that it was error for the trial court to allow the prosecutor to imply by his questioning that the statement in the affidavit was untrue.

During the cross examination of the defendant by the prosecutor, the facts surrounding the signing of the affidavit and the full facts of the status of the defendant's marriage to the deceased were explored in detail. The defendant was given the opportunity to explain and did explain the status of her marriage at all pertinent times and the fact that she had never been divorced from the deceased. Therefore, the jury could not have been misled by this line of cross examination. More importantly, however, the defendant stated during cross examination that she had sworn to the affidavit but that portions of the affidavit stating that the marriage had been "without interruptions" and that she and the deceased had "continued to live as husband and wife until his death" were untrue. The testimony of the defendant that she had made a prior statement under oath which she believed to be untrue was admissible to impeach her and cast doubt upon her credibility, even if the prior statement under oath was in fact correct. *See generally* 1 Brandis on North Carolina Evidence, §§ 35, 46 (2d rev. ed. 1982).

**[7]** The defendant also assigns as error the action of the trial court in allowing the prosecutor to question her about her use of the life insurance proceeds she received as a result of the death of her husband. The defendant's answers indicated that she had used a part of the life insurance proceeds to purchase a home. This tended to corroborate the testimony of Samuel Lancaster to the effect that he and the defendant planned to murder the deceased in part from a desire to obtain the insurance proceeds to purchase a house in which the two of them would live. This assignment of error is without merit and is overruled.

**[8]** The defendant also contends that the trial court erred in allowing the prosecutor to cross examine her concerning men she

had lived with but not been married to after her husband was killed. As a general rule, a defendant who takes the stand and testifies may be cross examined for purposes of impeachment concerning any acts of misconduct so long as the questions by the prosecutor are asked in good faith. *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980). The scope of cross examination of a defendant in a criminal action is largely within the discretion of the trial court. *State v. Ruof*, 296 N.C. 623, 252 S.E. 2d 720 (1979). The trial court's decision as to whether cross examination "transcends propriety" will not be disturbed absent a showing of abuse of discretion, *Id.*, or a showing that the jury verdict was improperly influenced thereby. *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970). Even if it is assumed *arguendo* that admitting the defendant's answers to these questions on cross examination was error, we perceive neither an abuse of discretion nor a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C.G.S. 15A-1443(a). The defendant's contentions in this regard are without merit.

[9] The defendant next assigns as error the action of the trial court in permitting the jury to return a verdict of guilty of accessory before the fact to murder. She contends that the indictment for murder will not support a verdict for accessory before the fact to murder. In the context of this case, the assignment is without merit.

Prior to October 1, 1979, the clear law of this State was that a defendant could be tried and convicted as an accessory before the fact on an indictment charging the principal felony. *State v. Holmes*, 296 N.C. 47, 249 S.E. 2d 380 (1978). Effective October 1, 1979, the General Assembly enacted N.C.G.S. 14-5.1 which provided that one indicted for a principal felony could not be convicted on that indictment as an accessory before the fact. 1979 N.C. Sess. Laws ch. 811; *State v. Small*, 301 N.C. 407, 272 S.E. 2d 128 (1980). The General Assembly later repealed N.C.G.S. 14-5.1 and enacted in its place N.C.G.S. 14-5.2 providing that: "All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony." 1981 N.C. Sess. Laws ch. 686; *State v. Woods*, 307 N.C. 213, 297 S.E. 2d

574 (1982). Although the elements of the crime of accessory before the fact remained separate and distinct from those of the principal felony, the legislature "abolished the difference in guilt and sentencing treatment" between a principal to the felony and an accessory before the fact to the same felony. *State v. Woods*, 307 N.C. at 218, 297 S.E. 2d at 577. *See State v. Cabey*, 307 N.C. 496, 299 S.E. 2d 194 (1983). In cases controlled by N.C.G.S. 14-5.2, an indictment charging the principal felony will support trial and conviction as an accessory before the fact.

The defendant contends nevertheless that she should have the advantage of the terms of former N.C.G.S. 14-5.1 which, if applied to her case, would render invalid her conviction as an accessory before the fact on an indictment charging her with murder. We do not agree. The statute the defendant seeks to rely upon has been repealed. In enacting N.C.G.S. 14-5.2 and repealing former N.C.G.S. 14-5.1, the General Assembly specifically provided that: "[N.C.G.S. 14-5.2] does not apply to any offense *committed before* [its effective date], and any such offense is punishable under the laws *in effect at the time* such offense was *committed.*" 1981 N.C. Sess. Laws ch. 686 (emphasis added). The effective date specified in the Act was July 1, 1981. *Id.* The offense in the present case was clearly "committed before the effective date of [N.C.G.S. 14-5.2]" and is not controlled by N.C.G.S. 14-5.1 which was repealed prior to the indictment of the defendant on the present charges. Instead, the defendant's case is controlled by "the laws in effect at the time [her] offense was committed." 1981 N.C. Sess. Laws ch. 686. As previously indicated, at the time the defendant's offenses were committed on and before October 1, 1978 she could be tried as an accessory before the fact on an indictment charging the principal felony of murder. *State v. Holmes*, 296 N.C. 47, 249 S.E. 2d 380 (1978). Therefore, her conviction as an accessory before the fact to murder on an indictment charging murder in the present case was appropriate. This assignment is without merit.

[10] The defendant next contends the trial court erred by permitting the jury to return guilty verdicts for both conspiracy to commit murder and accessory before the fact to murder and by entering judgments on both verdicts. Although it is not entirely clear, it appears that the defendant argues that one of the offenses is a lesser included offense of the other and that a convic-

tion of both is improper for this reason. It is sufficient to note that each of these offenses contains an essential element not a part of the other. *See State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978); *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907 (1977). The defendant was properly convicted and sentenced for both offenses. *Id.*

[11] By her final assignment of error, the defendant contends that the trial court erred in failing to direct a verdict of not guilty on the charges against her and by failing to enter a verdict of not guilty without regard to the verdict returned by the jury. A motion for a directed verdict of not guilty challenges the sufficiency of the evidence to go to the jury. The test of the sufficiency of the evidence is whether substantial evidence has been introduced of each essential element of the offense charged and that the defendant committed the offense. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Upon a motion to dismiss for insufficiency of the evidence, the evidence must be considered in the light most favorable to the State with the State entitled to every reasonable inference to be drawn therefrom. When viewed in such light, the evidence in the present case was more than sufficient to warrant submitting the case to the jury for its consideration as to the defendant's guilt of the offenses charged. This assignment is without merit.

The defendant received a fair trial free from prejudical error.

No error.

Justice VAUGHN took no part in the consideration or decision of this case.