STATE OF NORTH CAROLINA v. RANDOLPH WILSON

No. 282A93

(Filed 3 November 1994)

1. **Evidence and Witnesses § 2878 (NCI4th)— first-degree murder—purpose of defendant's presence in county— admissibility**

The trial court did not err in a prosecution for first-degree murder, conspiracy to commit murder, and first-degree burglary by prohibiting defendant from introducing evidence regarding his presence in Warren County where one of the State's theories was that defendant came down from New York to orchestrate a drug ring in North Carolina and defendant complains that he was not allowed to elicit testimony that defendant had relatives in Warren County. The trial court erred in excluding the witness's response to the question, "do you know for a fact that this defendant had relatives in Warren County?" because the witness's response to that question was based on his personal knowledge and it was relevant to establish that defendant had a motive other than selling drugs in moving to Warren County. However, there was no error in excluding further testimony that defendant had come to Warren County to visit family because the witness lacked personal knowledge and there was no prejudice from excluding the first

question because it leads only to the possibility that defendant had a mixed motive in coming to North Carolina and does not negate the State's evidence.

**Am Jur 2d, Witnesses §§ 484 et seq.**

### 2. Homicide § 371 (NCI4th)— accessory to murder—evidence sufficient

There was sufficient evidence of accessory before the fact to murder where there was testimony that after an argument one Royster had with the victim, defendant asked Royster what he wanted to do about it and Royster said he wanted to kill the victim; defendant later handed another man a sawed-off shotgun and told him to "go do that"; and defendant ordered the witness to go with the other man or he would wind up dead like the victim. Although defendant argued that the actions of the others were independent of anything he said or did and that the victim would have been murdered without any involvement by the defendant, the evidence must be considered in the light most favorable to the State when ruling on a motion to dismiss and the evidence here was sufficient to persuade a rational trier of fact that the defendant was guilty as an accessory before the fact beyond a reasonable doubt.

**Am Jur 2d, Homicide § 445.**

### 3. Homicide § 17 (NCI4th)— first-degree murder—accessory before the fact—plea bargains by principals—not an acquittal

Defendant could be found guilty of first-degree murder as an accessory before the fact where all of the people who perpetrated the killing pled guilty to second-degree murder. Although a person may not be convicted of an offense such as accessory before the fact if all of the principals are acquitted, a plea bargain is not the same as an acquittal.

**Am Jur 2d, Homicide § 28.**

### 4. Evidence and Witnesses § 1070 (NCI4th)— first-degree murder—flight—evidence sufficient

The evidence in a prosecution for first-degree murder, conspiracy to commit murder, and burglary supports a finding by the jury that defendant was in flight, and the pattern jury instruction on flight was a correct statement of law, where the jury received

STATE v. WILSON

[338 N.C. 244 (1994)]

testimony that defendant told everyone to pack up and go to a motel as soon as he heard that the victim had been murdered; defendant decided that he and another man were going to leave town; and defendant ordered the other man to drive them to the bus station, where they boarded a bus for New York. Although defendant contends that there was evidence to rebut the State's inference of flight, it was for the jury to decide whether all of the facts and circumstances supported the State's contention that defendant had fled and the trial court appropriately told the jury that evidence of flight "may" be considered.

**Am Jur 2d, Evidence §§ 532 et seq.**

**5. Criminal Law § 1133 (NCI4th)— conspiracy to murder— first-degree burglary—aggravating factors—inducement of others—position of leadership or dominance**

The trial court did not err by finding as aggravating factors for conspiracy to murder and first-degree burglary that defendant induced others to participate and that he occupied a position of leadership or dominance where there was testimony that defendant handed a shotgun to another with the order that that person kill the victim, defendant ordered another person to accompany the first or be killed himself, and all of the participants described defendant as the leader of the group. Although in *State v. Nobles*, 329 N.C. 239, it was found that the idea to commit the crime originated with defendant, that case does not stand for the proposition that the idea must originate with defendant; the State must show only that the participants would not have engaged in the activity but for the inducement by the defendant.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**6. Criminal Law § 1098 (NCI4th)— conspiracy to commit murder—first-degree burglary—aggravating factors—use of elements of offense**

There was no error in sentencing defendant for conspiracy to commit murder and first-degree burglary where the defendant contended that the same evidence used to convict him was used to support the aggravating factors that he induced others to participate in the commission of the offense and that he occupied a position of leadership or dominance. The jury was instructed that they had to find beyond reasonable doubt that the defendant "knowingly advised and encouraged" the other persons to commit

the offenses. A person can advise and encourage without inducing, and one can advise and encourage without being a leader or in a dominant position.

**Am Jur 2d, Criminal Law §§ 598, 599.**

7. **Criminal Law § 1142 (NCI4th)— conspiracy to commit murder and first-degree burglary—aggravating factors— offenses committed to disrupt enforcement of laws and to hinder enforcement**

There was sufficient evidence when sentencing defendant for conspiracy to commit murder and first-degree burglary to support the aggravating factors that the offenses were committed to disrupt the lawful exercise of the enforcement of the laws and to hinder the lawful exercise of the enforcement of the laws where the evidence was sufficient to lead to the inference that the victim was killed to get rid of a "snitch" and also to deter others from reporting the drug activity of the gang.

**Am Jur 2d, Criminal Law §§ 598, 599.**

8. **Criminal Law § 1100 (NCI4th)— conspiracy to commit murder and first-degree burglary—aggravating factors— offenses committed to disrupt enforcement of laws and to hinder enforcement—supported by same evidence**

A defendant was entitled to a new sentencing hearing for conspiracy to commit murder and first-degree burglary where the terms for each exceeded the presumptive and the aggravating factors that the offense was committed to disrupt the lawful exercise of the enforcement of the laws and that it was committed to hinder the lawful exercise of the enforcement of the laws were based on the same evidence concerning a gang's drug activity and were inherently duplicative.

**Am Jur 2d, Criminal Law §§ 598, 599.**

9. **Criminal Law § 439 (NCI4th)— accessory before the fact to murder, conspiracy, burglary—prosecutor's argument—not grossly improper**

There was no gross impropriety in a prosecution for first-degree burglary, conspiracy to murder, and first-degree murder by being an accessory before the fact where the prosecutor's argument compared defendant to Hitler, told the jury that the killing was the most brutal in this country or in any land, told the

jury that the case was being tried because the victim had been denied his constitutional rights, and told the jury that the status of the economy and the war on drugs was dependent on the jury's verdict. This case was hotly contested in that it focused on the credibility of witnesses and, although the closing argument was vigorous and aggressive, it was not grossly improper.

**Am Jur 2d, Trial §§ 567 et seq., 648, 681, 682, 692 et seq.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

**Supreme Court's views as to what courtoom statements made by prosecuting attorney during criminal trial violate due process or constitute denial of fair trial. 40 L. Ed. 2d 886.**

10. **Homicide §§ 371, 374 (NCI4th)— conspiracy to commit murder—accessory before the fact—not merged**

Convictions for conspiracy to commit murder and for first-degree murder by being an accessory did not merge because the same evidence was used to prove both offenses, as defendant contended, because each offense contained an essential element not a part of the other.

**Am Jur 2d, Homicide § 445.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Hight, J., at the 4 January 1992 Criminal Session of Superior Court, Warren County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to the additional judgments imposed for conspiracy to commit murder and first-degree burglary was allowed 21 July 1993. Heard in the Supreme Court 2 February 1994.

*Michael F. Easley, Attorney General, by Robert J. Blum, Special Deputy Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

**STATE v. WILSON**

[338 N.C. 244 (1994)]

MEYER, Justice.

Defendant was charged with first-degree murder, conspiracy to commit murder, and first-degree burglary. He was tried noncapitally at the 4 January 1992 Criminal Session of Superior Court, Warren County, and was found guilty as charged. The trial court found aggravating and mitigating factors and sentenced defendant to two consecutive life sentences for the murder and burglary convictions plus thirty years for the conspiracy conviction. On appeal, defendant raises seven assignments of error. For the reasons discussed herein, we find no error in defendant's conviction and sentence for first-degree murder but remand for resentencing on defendant's conspiracy to commit murder and first-degree burglary convictions.

This case surrounds the conspiratorial murder of Calvin Hargrove. Implicated in the murder were defendant, Jeremiah Royster, Shannon Norris, Hashim O'Neal, Rofae Davis, and Lamont Alston. On 27 May 1991, Royster engaged in a crack cocaine transaction with his cousin, Calvin Hargrove. An argument ensued over the cocaine. Later that day, Royster approached Hargrove with a gun and threatened to kill him. Hargrove reported this to his mother, his brother, and his girlfriend (Debra). Hargrove decided to take out a warrant for the arrest of Royster, and he spoke with Deputy Davis of the Warren County Sheriff's Department at 10:30 p.m. After being told that he would have to go to the magistrate's office, which closed at 11:00 p.m., Hargrove decided to wait until the next day. When the police arrived at Royster's house, he flushed the cocaine down a toilet.

Some of Royster's friends (Davis and O'Neal and two others) noticed the police cars at Royster's house. They went to defendant's trailer and, with defendant and Alston, went back to Royster's house to investigate the matter. Royster told them that Hargrove had "called the police on him." According to Davis and Alston, defendant asked Royster what he wanted to do about it, and Royster said, "I want to kill him because he violated." Alston stated that defendant asked Royster if that was really what he wanted, and Royster said yes. O'Neal testified for the defendant that it was Norris who asked Royster what he wanted done. According to Davis' statement to an officer, defendant acted as though he did not want to kill Hargrove, but Royster told him it had to be done to prevent others from "messing with" them. There was some discussion about burning Hargrove's

house down, but this idea was rejected. They returned to defendant's trailer in Norlina.

Davis testified that at defendant's trailer, defendant handed O'Neal a sawed-off shotgun and told him to "go do that." Further, defendant ordered Davis to go with O'Neal, and O'Neal handed Davis a shotgun shell. When Davis indicated that he did not want to kill Hargrove, defendant threatened that if he refused he would end up dead like Hargrove. Defendant then handed Davis a .22 pistol. O'Neal testified that after they returned to the trailer, defendant smoked "reefer" and drank beer until he passed out. It was then that Davis, O'Neal, and Norris discussed the situation further. Norris got a shotgun, gave it to O'Neal, and told O'Neal and Davis to kill Hargrove. According to Norris, O'Neal and Davis left and then returned. They said they were going to "catch a body." O'Neal and Davis then left again. According to Davis, they went to Royster's house, where Royster got his .9-mm gun and headed for Hargrove's.

O'Neal, Davis, and Royster went through a window of Hargrove's home, and either O'Neal or Davis shot Hargrove, who died of a shotgun wound to the head. Davis testified that O'Neal shot him, and O'Neal testified that Davis shot him. They then returned to defendant's trailer. Norris, who was still at the trailer, testified that Davis and O'Neal said they had killed someone.

Norris testified that O'Neal walked outside to get rid of the shotgun. Defendant asked if "they" wanted to go to a hotel that night and they went. Davis testified that defendant told everyone to pack their clothes and hide the shotgun. Davis, at defendant's request, took defendant and O'Neal to various bus stations. Defendant told Davis to throw the shell out of the window and he did so. Davis dropped O'Neal and defendant off and returned to Warrenton. According to O'Neal, Norris suggested that they go to the motel. O'Neal testified that he and defendant went to New York afterward. Davis testified that O'Neal and defendant called from New York a couple of days later to find out what happened. The shell was later found, and the shotgun was found behind defendant's trailer.

I.

[1] In his first assignment of error, defendant contends that the trial court erred in prohibiting defendant from introducing evidence regarding his presence in Warren County. Defendant contends that he was thereby deprived of his right to confront the witnesses against

him and present a defense, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution.

One of the State's theories was that defendant came down from New York to orchestrate a drug ring in North Carolina. The State sought to show that defendant was the ringleader of the drug operation and thus was responsible for the shooting of Calvin Hargrove. Defendant complains that during the cross-examination of Shannon Norris, a witness for the State, he was not allowed to elicit testimony that defendant had relatives in Warren County. Defendant sought to present the jury with a legitimate reason for his relocating to North Carolina other than to start a drug business. After the State objected to the testimony, the trial judge excused the jury and allowed defendant to perform a voir dire of the witness. Norris' testimony as brought out by defense counsel was as follows:

Q.   The question is, do you know for a fact that this defendant had relatives in Warren County? Question one.

A.   Yes.

Q.   And do you know that he has—from the time that you've known him do you know for a fact that he had come to Warren County to visit his relatives?

A.   I can't really say because I was locked up in New York. When I came out of jail up there, that's when I first came down here, but I heard, you know, that he had came down here to visit his people down here before.

Q.   Heard he had what?

A.   Had came down here to visit his family.

The trial judge sustained the State's objection without further argument by counsel or comment.

The trial court erred in excluding Norris' response to defense counsel's question, "do you know for a fact that this defendant had relatives in Warren County?" Norris' testimony in response to this question was based on his personal knowledge and thus was competent under N.C.G.S. § 8C-1, Rule 602. Further, the testimony, albeit weak, was relevant to establish that defendant had a motive other than selling drugs in moving to Warren County. " 'Relevant evidence' means evidence having any tendency to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Since the State's theory of the case was that defendant had moved to Warren County to act as the leader of a drug ring, and as such had ordered a "hit" on the victim, evidence demonstrating that defendant may have had alternative motivations in moving to Warren County was relevant. The testimony may have had the tendency to make the State's theory less plausible than it would have been without the testimony.

However, the trial court did not err in excluding Norris' further testimony that "he had heard . . . that [defendant] had . . . c[o]me down here [to Warren County] to visit his family." Norris lacked personal knowledge and thus was incompetent to respond to defense counsel's question, "do you know for a fact that [defendant] had come to Warren County to visit his relatives?" Further, the basis of Norris' information was clearly hearsay. The testimony was being offered to establish the truth of the matter asserted—that defendant had visited his family in Warren County before. The statement does not fit within any exception to the general rule that hearsay is not admissible. N.C.G.S. § 8C-1, Rule 802 (1992).

The question thus becomes whether the trial court's error as to defense counsel's first question was harmless error. The error involved a ruling on the evidence and does not implicate a right arising under the federal or state Constitution. Therefore, the test is whether there is a reasonable possibility that had the error not occurred, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1993); State v. Milby, 302 N.C. 137, 273 S.E.2d 716 (1981). Applying this test, we find that the error is harmless. Two of the State's witnesses, Shannon Norris and Lamont Alston, testified that defendant had come down from New York to sell drugs. The only evidence improperly excluded by the trial court was the testimony that Norris knew that defendant had family in North Carolina. Even if the jury believed that defendant had family here, it would not directly rebut the State's evidence since it only leads to the possibility that defendant had a mixed motive in coming to North Carolina. It does not negate in any way the State's evidence.

Therefore, we conclude that had the evidence been admitted, there is no reasonable possibility that a different result would have been reached at trial. This assignment of error is overruled.

**STATE v. WILSON**

[338 N.C. 244 (1994)]

## II.

**[2]** In his second assignment of error, defendant contends that the evidence was insufficient to persuade a rational trier of fact that the defendant was guilty of first-degree murder beyond a reasonable doubt. The State's theory was that the defendant was an accessory before the fact. To be an accessory before the fact, the defendant must have: (1) counseled, procured, commanded, encouraged, or aided the principal to murder the victim; (2) the principal must have murdered the victim; and (3) defendant must not have been present when the murder was committed. *State v. Davis*, 319 N.C. 620, 356 S.E.2d 340 (1987).

The State's evidence in this case that best supports the theory of accessory before the fact is the testimony of Rofae Davis. Davis testified that after the argument Royster had with Hargrove, who had called the police, defendant asked Royster what he wanted to do about it. Royster said that he wanted to kill Hargrove. Davis testified that later, at the trailer in Norlina, defendant handed O'Neal a sawed-off shotgun and told him to "go do that." Further, defendant ordered Davis to go with O'Neal and threatened that if he refused he would end up dead like Hargrove.

Defendant argues that there was insufficient evidence to show that he was an accessory before the fact. He argues that the actions of Davis, Royster, and O'Neal were independent of anything defendant said or did. Calvin Hargrove would have been murdered without any involvement by the defendant. Defendant further argues that even though Davis testified that he (Davis) was forced by defendant to go to Hargrove's, Davis said he did not shoot Hargrove. Defendant argues that the gun was not his and that he did not organize or plan the killing. Moreover, his statement "go do that" is ambiguous.

When ruling on defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State. *State v. Davis*, 325 N.C. 693, 386 S.E.2d 187 (1989). The State is entitled to every reasonable inference to be drawn from the evidence presented. *Id.* Evidence favorable to the State is to be considered as a whole, and the test of sufficiency to withstand the motion to dismiss is the same whether the evidence is direct, circumstantial, or both. *State v. Earnhardt*, 307 N.C. 62, 696 S.E.2d 649 (1982). In viewing the evidence in the light most favorable to the State, we find that it was sufficient to persuade a rational trier of fact that the defendant was

guilty of murder beyond a reasonable doubt as an accessory before the fact.

[3] Defendant also contends that all of the people who perpetrated the killing pled guilty to second-degree murder, so it is as though they were acquitted of first-degree murder. Therefore, defendant's conviction of murder based on an accessory before the fact cannot stand since his cohorts were effectively acquitted.

The State concedes that a person may not be convicted of an offense such as accessory before the fact if all of the principals in the first-degree murder are acquitted. *State v. Robey*, 91 N.C. App. 198, 371 S.E.2d 711, *disc. rev. denied & appeal dismissed*, 323 N.C. 479, 373 S.E.2d 874 (1988). The primary difference between an accessory before the fact and a principal is that the former was not present at the scene of the crime when it was committed. *State v. Small*, 301 N.C. 407, 272 S.E.2d 128 (1980). Therefore, if the only principal is "acquitted" of first-degree murder but is found guilty of second-degree murder, the most an accessory before the fact could be convicted of is second-degree murder.

In this case, the principals plea bargained for second-degree murder. The State maintains and we agree that a plea bargain is not the same as an acquittal. In *State v. Cassell*, 24 N.C. App. 717, 212 S.E.2d 208, *cert. denied & appeal dismissed*, 287 N.C. 261, 214 S.E.2d 433 (1975), the Court of Appeals determined that the defendant could properly be tried for second-degree murder as an aider and abettor even though the State had previously allowed the actual perpetrator to plead guilty to voluntary manslaughter. Because the principals here were not acquitted of first-degree murder, we find that this defendant can be found guilty of first-degree murder. Accordingly, this assignment of error is overruled.

III.

[4] In his third assignment of error, defendant contends that the trial court erred in instructing the jury as to flight. The trial court gave the following pattern jury instruction on flight:

> In this case, the State contends that the defendant fled. Evidence of flight may be considered by you, together with all of the facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show consciousness of guilt.

STATE v. WILSON

[338 N.C. 244 (1994)]

However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. Further this circumstance has no bearing on the question of whether the defendant acted with premeditation or deliberation. Therefore, it must not be considered by you as evidence of premeditation and deliberation.

Defendant argues that it is improper to give such an instruction because it tends to emphasize that particular evidence to the exclusion of other evidence, presents an implication that the trial court has an opinion about the evidence of flight, and lessens the State's burden of proving each essential element beyond a reasonable doubt. Defendant further argues that the instruction is confusing because the jury was not instructed as to which offense the evidence of flight should apply.

Defendant concedes that this issue was recently raised and decided by this Court in *State v. Jeffries*, 333 N.C. 501, 428 S.E.2d 150. In *Jeffries*, we held that the flight instruction is a correct statement of the law and was appropriate to give to the jury. *Id.* at 511, 428 S.E.2d at 155.

Furthermore, we believe that the evidence in this case supports a finding by the jury that the defendant was in flight. Here, the jury received testimony from Davis that as soon as the defendant heard that Calvin Hargrove had in fact been murdered, he told everyone to pack up and go to a motel. Defendant also decided that O'Neal and he were going to leave town. Davis testified that the defendant ordered him to drive them to the bus station the next day, where they boarded a bus for New York. " '[F]light from a crime shortly after its commission is admissible as evidence of guilt.' " *State v. Tucker*, 329 N.C. 709, 722, 407 S.E.2d 805, 813 (1991) (quoting *State v. Self*, 280 N.C. 665, 672, 187 S.E.2d 93, 97 (1972)). A trial court may properly instruct on flight " '[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.' " *State v. Green*, 321 N.C. 594, 607, 365 S.E.2d 587, 595 (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)), *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988). We hold that the evidence in this case supports the instruction on flight.

Defendant further argues that O'Neal testified that it was not the defendant, but someone else, who decided that they would go to a motel. O'Neal stated that defendant had to be awakened to accompany them. Thus, defendant maintains that this was evidence to rebut the State's inference of flight. We disagree. It was for the jury to

decide whether these facts, together with all other facts and circumstances, supported the State's contention that defendant had fled. The trial court appropriately told the jury that evidence of flight "may" be considered. Therefore, we find that the trial court did not err in giving the flight instruction.

## IV.

**[5]** In his fourth assignment of error, defendant contends that the trial court erred in finding as factors in aggravation of the offenses of conspiracy to commit murder and first-degree burglary (1) that defendant induced others to participate in the commission of the offense and (2) that defendant occupied a position of leadership or dominance. N.C.G.S. § 15A-1340.4(a).

Defendant first argues that the evidence did not support the finding of these factors. He relies on *State v. Nobles*, 329 N.C. 239, 404 S.E.2d 668 (1991), to support his argument that in order to induce others, the idea to commit a crime must "originate" with the defendant. Defendant argues that there is insufficient evidence in this case to show that the idea to kill Hargrove originated with the defendant and that he then induced others to go along with him. Although in *Nobles* we did find that the idea to commit the crime originated with the defendant, that case does not stand for the proposition that the idea must originate with the defendant. *Id.* at 242, 404 S.E.2d at 670. The State must show only that the participants would not have engaged in the activity but for the inducement by the defendant. *State v. Hager*, 320 N.C. 77, 357 S.E.2d 615 (1987); *State v. Payne*, 311 N.C. 291, 316 S.E.2d 64 (1984). To support the second aggravating factor, the State must show that the defendant was in a position of dominance or leadership. *State v. Gore*, 68 N.C. App. 305, 314 S.E.2d 300 (1984). These findings in aggravation must be proved by a preponderance of the evidence. *State v. Canty*, 321 N.C. 520, 364 S.E.2d 410 (1988).

There is sufficient evidence in this case to prove by a preponderance of the evidence that the defendant induced the others to participate in the commission of the offense and that the defendant occupied a position of leadership or dominance. Davis testified that the defendant handed O'Neal the shotgun with the order for O'Neal to kill Hargrove. Davis also stated that the defendant ordered him to accompany O'Neal or be killed himself. In addition, Davis, Alston, and Norris all described the defendant as the leader of the group.

**[6]** Next, defendant argues that the same evidence used to convict him was used to support the aggravating factors that he induced others to participate in the commission of the offense and that he occupied a position of leadership or dominance. Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation. N.C.G.S. § 15A-1340.4(a)(1) (1993); *State v. Thompson*, 309 N.C. 421, 307 S.E.2d 156 (1983).

Here, the trial court considered these aggravating factors only as to the offense of conspiracy to commit murder and the offense of first-degree burglary. In the trial judge's instructions to the jurors, he stated that they had to find beyond a reasonable doubt that the defendant "knowingly advised and encouraged" the other persons to commit the offenses. The State argues that knowingly advising and encouraging others to commit an offense does not require "inducing" as an element of proof, nor does it require that the defendant occupy a position of leadership or dominance of other participants. A person can advise and encourage an act without inducing the act. Furthermore, one can advise and encourage without being a leader or in a dominant position. We agree with the State that the same evidence used to support defendant's convictions was not necessary to prove the aggravating factors.

V.

**[7]** In his fifth assignment of error, defendant contends that the trial court erred in finding as factors in aggravation of the offenses of conspiracy to commit murder and first-degree burglary (1) that the offenses were committed *to disrupt* the lawful exercise of the enforcement of the laws and (2) that the offenses were committed *to hinder* the lawful exercise of the enforcement of the laws. N.C.G.S. § 15A-1340.4(a) (emphasis added). Defendant argues that the evidence was insufficient to support these findings. He maintains that the State's theory was that Hargrove was killed in order to protect the drug ring. Defendant argues that the evidence does not show a drug ring, but rather the occasional use of drugs. Moreover, the State's evidence showed that Royster was upset with Hargrove because he had complained to the police that Royster had pointed a weapon at him and threatened his life. Davis testified that Royster said he wanted to kill Hargrove because "he violated," meaning he had "called the police on him." Defendant argues that this evidence shows that the killing was motivated by revenge.

For this argument, defendant relies on *State v. Parker*, 315 N.C. 249, 337 S.E.2d 497 (1988). In *Parker*, defendant complained that the evidence was insufficient to sustain the aggravating factor that the murder was committed to escape the processes of the law. The State's evidence showed that the defendant participated in a robbery of the victim. After the robbery, which included stabbing the victim, the defendant went up the road to act as a look-out. The codefendants then tied the victim to a tree, and he bled to death. Further evidence tended to show that defendant participated in the murder because of ill will harbored toward the victim because the victim had accused him of other break-ins and had reported his brother to the police. Also, defendant had planned to leave town because he thought he would be arrested for failing to appear in court for fishing violations. We determined that this evidence did not support the finding that the murder was committed to escape the processes of the law. *Id.* at 256-57, 337 S.E.2d at 501.

*Parker* is not applicable here. There is sufficient evidence in this case to support the aggravating factors. Norris testified that he and the defendant were in Warren County from New York and that they made their living selling drugs. Lamont Alston testified that Jeremiah Royster was selling drugs for the defendant. Alston further testified that the argument between Hargrove and Royster was over two rocks of crack cocaine and that Hargrove had called the police. Royster was angry and wanted Hargrove dead. Davis testified that Royster said that he wanted to kill Hargrove because "he violated." Further, Davis told an officer that Royster told Davis he had to aid in the murder so that no one else would "mess with" them. We believe this evidence is sufficient to lead to the inference that Hargrove was killed to get rid of a "snitch" and also to deter others from reporting the drug activity of the gang.

[8] Although we find that the aggravating factors are supported by the evidence, we are nonetheless concerned by their duplicity. Defendant failed to address this issue in his brief. However, where an error appears on the face of the record, this Court can deal with it whether it was raised by the parties or not. *State v. McLean*, 282 N.C. 147, 191 S.E.2d 598 (1972), *cert. denied*, 410 U.S. 968, 35 L. Ed. 2d 704 (1973).

It is well settled that the same evidence may not be used to prove more than one aggravating circumstance. *State v. Jones*, 327 N.C. 439, 396 S.E.2d 309 (1990); *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418

(1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990); *State v. Green*, 321 N.C. 594, 365 S.E.2d 587 (1988); *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 (1987). In *Quesinberry*, defendant was found guilty of first-degree murder by premeditation and deliberation. We held that the trial court erred by submitting as aggravating circumstances both that the murder was committed while the defendant was engaged in the commission of an armed robbery and that it was committed for pecuniary gain. On the facts in *Quesinberry*, we concluded that submission of both circumstances was impermissibly duplicative. "Although the pecuniary gain factor addresses motive specifically, the other cannot be perceived as conduct alone, for . . . the motive of pecuniary gain provided the impetus for the robbery itself." 319 N.C. at 238, 354 S.E.2d at 452. In *Quesinberry*, "[n]ot only [was] it illogical to divorce the motive from the act . . . , but the same evidence [was underlying] proof of both factors." *Id.* at 239, 354 S.E.2d at 452.

We believe that like *Quesinberry*, the aggravating factors in this case, that the offense was committed *to disrupt* the lawful exercise of the enforcement of the laws and that the offense was committed *to hinder* the lawful exercise of the enforcement of the laws, are based on the same evidence and are inherently duplicative. Both factors involve the drug activity of the gang.

When the trial judge errs in finding an aggravating factor and imposes a sentence in excess of the presumptive term, the case must be remanded for a new sentencing hearing. *State v. Hayes*, 314 N.C. 460, 334 S.E.2d 741 (1985). On the conspiracy conviction, defendant was sentenced to the maximum term of thirty years. On the first-degree burglary conviction, defendant was sentenced to the maximum term of life. The terms imposed for each offense exceeded the presumptive terms set out in N.C.G.S. § 15A-1340.4(f). Therefore, defendant is entitled to resentencing on his convictions for conspiracy to commit murder and for first-degree burglary.

VI.

[9] In his sixth assignment of error, defendant contends that the prosecutors' closing argument to the jury was grossly improper and should have been stricken *ex mero motu* in that it placed facts not in evidence before the jury and was calculated solely to inflame the jury.

Defendant submits that the prosecutors' closing argument was grossly improper in that: (1) they compared defendant to Hitler,

(2) the jury was told that the killing was the most brutal in this country or in any land, (3) the jury was informed that the case was being tried because Calvin Hargrove had been denied his constitutional rights, and (4) the status of the economy and the future of the war on drugs was dependent on the jury's verdict.

Defendant acknowledges that he failed to object to any of these statements at trial. Ordinarily, an objection to portions of the State's final argument to the jury should be made before the case is submitted to the jury. Nevertheless, the Supreme Court, in the exercise of its supervisory jurisdiction, may take cognizance of grossly improper remarks *ex mero motu* to preserve defendant's constitutional right to a fair and impartial trial. *State v. King*, 326 N.C. 662, 392 S.E.2d 609 (1990); *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983).

This Court has held that counsel must be allowed wide latitude in the argument of a hotly contested case. *King*, 326 N.C. at 676, 392 S.E.2d at 618. The present case was hotly contested in that it focused upon the credibility of witnesses. Although the closing argument was vigorous and aggressive, we do not believe that it was grossly improper. As a result, the trial court did not err by failing to intervene *ex mero motu* during the final argument. This assignment of error is overruled.

VII.

[10] In his final assignment of error, which defendant raised by a motion to amend his brief filed with this Court and which we allowed on 31 January 1994, defendant contends that the conviction for conspiracy to commit murder merges with the conviction of first-degree murder.

Defendant was found guilty of first-degree murder based on his conduct as an accessory before the fact of the actual murder of Hargrove. To be an accessory before the fact, the defendant must have: (1) counseled, procured, commanded, encouraged, or aided the principal to murder the victim; (2) the principal must have murdered the victim; and (3) the defendant must not have been present when the murder was committed. *State v. Davis*, 319 N.C. 620, 356 S.E.2d 340. The State's evidence supporting this theory was that the defendant handed O'Neal a shotgun and told him to "go do that." In addition, when Davis told the group that he did not want to kill anyone, the defendant told him to go or he would end up dead like Hargrove.

Defendant was also found guilty of conspiracy to commit murder. A conspiracy to commit murder requires an agreement with at least one other person to commit murder and that the defendant and at least one other person intended at the time of the agreement that murder would in fact be carried out. *State v. Woods*, 307 N.C. 213, 297 S.E.2d 574 (1982). Defendant argues that the State used the same evidence to show defendant conspired with O'Neal and Royster to kill Hargrove as it used to show defendant was an accessory before the fact. Therefore, the conviction for conspiracy and the conviction for first-degree murder should merge because the same evidence is used to prove both offenses. We disagree.

We addressed this exact issue in *State v. Gallagher*, 313 N.C. 132, 326 S.E.2d 873 (1985). In *Gallagher*, the defendant argued that the trial court erred by permitting the jury to return guilty verdicts for both conspiracy to commit murder and accessory before the fact to murder. Defendant Gallagher maintained that conspiracy to commit murder was a lesser included offense of murder, and therefore she could not be convicted and sentenced for both. This Court disagreed, stating: "It is sufficient to note that each of these offenses contains an essential element not a part of the other." *Id.* at 142, 326 S.E.2d at 880. We stand by our decision in *Gallagher* and therefore overrule this assignment of error.

In summary, we find no error in defendant's first-degree murder conviction but remand for resentencing as to defendant's convictions for conspiracy to commit murder and for first-degree burglary.

91CRS1215, FIRST-DEGREE MURDER: NO ERROR;

91CRS1239, CONSPIRACY TO COMMIT MURDER: REMANDED FOR RESENTENCING;

91CRS1240, FIRST-DEGREE BURGLARY: REMANDED FOR RESENTENCING.